Brinkerhoee, J.
We are told by counsel in the argument of this case, that the pleadings in the court below were finally framed with a view to present the sole question, whether the paper writing which is the subject of controversy, here, is, or can be, by the laws of Ohio, regarded as in any way a valid testamentary instrument — either as the joint will of David and Hannah Walker, or as the several will of each or either of them. This, too, is the question which counsel have argued. We have not felt ourselves at liberty to evade the ques *165 tion; for, if on a point of practice, we were now to do so, the question would doubtless presently re-appear, and be followed by the evil of a more protracted litigation.
In considering the question, it is of primary importance to have a definite idea of what the question is; and, to this end, to notice what it is not.
It is not a question relating to a will joint in form merely; as being drawn upon the same sheet of paper, executed simultaneously, and employing terms at the beginning and close of the instrument, which, considered by themselves, would imply that it was the joint act of the parties, while, in the body of the will, its provisions are such as to be really and necessarily several in their substance, operation and effect. As where A. and B., joining in the execution of one testamentary instrument, therein declare their will to be, that, on the death of either of them, the survivor shall have the property of the one who dies first. Such wills have been called mutual wills, by way of contradistinction from joint wills; and in Connecticut and Georgia, they have been upheld; because, it is said, they are, though joint in form, necessarily several in their operation and effect; inasmuch as, under such an instrument, there can be but one giver and one taker — the whole taking effect on the death of that one who first dies, operating only on the estate of that one — and there being, therefore, in substance and effect, but one testamentary instrument. Lewis v. Scofield, 26 Conn. R. 452; Evans v. Smith, 28 Georgia R. 98. Nor is this the case of a will where A. and B. join in the execution of what is, in form, a joint will, but which only disposes of property of which A. is the sole owner — as shown by evidence aliunde the will. Such an instrument has been sustained as the several will of A.; B., having nothing on which the will could operate, being held to be a mere cipher in the transaction. Thomas Rogers et al, appellants, etc., 11 Maine R. 303.
Nor is this the case of a will, of which we have found no example in the books, but which may be readily imagined, where, though the instrument be in form and mode and time of execution joint, yet, in the body of the instrument, the tes *166 tators each severally devise or bequeath to the objects of their bounty, respectively, portions of the estate of each.
Upon questions presented by such wills as these, we do not assume to pass. We leave them to be determined when they arise.
Nor is this the case of a bill in equity, based upon a compact, or contract, of parties, embodied in the form of a testamentary instrument, and seeking a decree for a specific performance of the agreement. A case of that kind might pre sent difficulties with which we have now neither occasion nor disposition to grapple.
But we regard the case as simply a proceeding under the statute to contest the validity of a will; in which, on the face of the will, taken in connection with the admitted circumstances and relations of the alleged testators, the question is presented whether the instrument which has been admitted to probate can, as a will, have any legal validity. And the case is one in which two parties, husband and wife, attempt to make a will, which is not joint in form merely, and capable only of a several operation and effect; but one which is joint in substance; where the parties to it are severally owners of property in their individual right; where they attempt jointly to dispose of the property of each, and to treat it as a joint fund, jointly devising the real property of the wife, and jointly bequeathing legacies out of the personalty of both, without designating the proportion in which the personalty of each or either shall contribute for their payment; and from which it is evident that the provisions of the instrument must have been a matter of negotiation between the parties, and in which the disposition which each of the parties would be willing to make of his or her property would, of course, be influenced and modified by the dispositions which would affect the property of the other. In short, if there can be such a thing as a joint will, this is a joint will.
If we look at this question solely in the light which decided cases, and the opinions of elementary writers throw upon it, we are left in doubt and uncertainty.
In 1 Williams on Executors, 10, it is said : “Another dif *167 ference between a will and a deed may be mentioned, that there can not be a joint or mutual will: an instrument of such a nature is unknown to the testamentary law of this country.” Again, on'page 104, he says: “It has already been stated that a mutual and conjoint will is unknown to the testamentary law of this country. One ground of*objection to such an instrument as testamentary, is its irrevocability. However, such a will may, it should seem in some cases, be enforced in equity as a compact.” And he then proceeds to notice two cases to which we will refer hereafter.
So, in 1 Jarmin on Wills, 26, it is said: “A joint or mutual will is said to be unknown to the testamentary law of England. One objection to such an instrument as testamentary, is its irrevocability; for it is the essence of a will that it is ambulatory, and may be revoked at any time prior to the death of the testator. Thus, in Clayton v. Liverman, it was held that a paper writing, executed by two persons, making^ after the death of both, a joint disposition of all their property, can not be admitted to probate as a conjoint or mutual will. And such a paper writing can not be proved as the separate will of either of the supposed testators, because it purports to be a joint and not a separate will — and because it implies from its structure 'an agreement between them, which is inconsistent with its revocability, and, therefore, prevents its operation as a will. However, such a will may, it should seem, in some cases, be enforced in equity as a compact.”
In the case of the Earl of Darlington v. Pulteney, 1 Cowper, 260, Lord Mansfield, considering the question whether a common law power to appoint by deed, was well executed by a will or not, says : “ The first requisite which the power prescribes is impossible to be performed by will; which is, that it shall be by joint deed of Lord Bath and his son. Now there can not be a joint will.”
The cases of Dufour v. Pereira, 1 Dickens’ Ch. R. 419, and Lord Walpole v. Lord Oxford, 3 Vesey, jr., 402, have really nothing to do with this case, regarding it, as we do, simply as a proceeding under the statute, for contesting the validity of a will. In those cases, the first seems to have been the case of *168 a joint will, and the latter of separate wills mutually made in pursuance of an agreement between the respective testators. In both cases, a revocation, or modification, was made by one of the parties to the joint will, or mutual wills. In neither case was the question of the validity of any of these instruments, as wills, before the court. On that point, no decision was made — no opinion expressed. In both cases, they were proceedings in equity to enforce the performance of contracts, compacts, or agreements, alleged to be embodied in instruments testamentary in form. In the first case, Lord Camden sustained the alleged compact, and held the attempted revocation to be of no effect; in the second case, Lord Loughborough sustained the revocation; not however, it would seem, on the ground either of the validity or the invalidity of such instruments, whether considered as wills or as compacts, but on the ground of the uncertainty and unfairness of the alleged compact. These cases, I repeat, have nothing to do with the question before us. When a petition, in the nature of a bill in equity, is filed to enforce any contract which may be supposed to be embodied in the instrument under consideration, then, and not until then, may these cases have a bearing on the question to be considered.
We have said that these cases have no application to the question before us; and we may say the same, in respect to the cases- of Rogers et al., in Maine, Lewis v. Scofield, in Connecticut, and Evans v. Smith, in Georgia, before referred to; for in all of those eases the wills respectively were sustained on the ground, that though they were joint in form, they yet were, and, from their structure and the nature of their provisions, viewed in the light of surrounding circumstances, could be only separate wills in their substance, operation, and effect. And in all those cases the courts which decided them, are careful to distinguish between such wills and those which are joint alike in form and in substance. And in none of them is there the least intimation that a paper like the one now under consideration would be upheld as a testamentary instrument.
Thus far, it will be seen, we have no decided case upon the *169 question before us; but we have the opinion of Lord Mansfield, expressed arguendo, and the opinions of learned elementary writers in Williams and Jarman, to the effect that such a thing as a joint will can not be, and is unknown to the testamentary laws of England.
We will now notice the adjudged cases, so far as we are aware of the existence of such.
The first case in England of which we are aware, is that of Hobson v. Blackburn, 1 Addams’ Eccl. R. 274. The instrument passed upon, in that case, resembles those in the cases from Georgia and Connecticut, before referred to. A brother and two sisters joined in the execution of an instrument of testamentary form, providing (subject to a condition not necessary to be here noticed),1 in substance, that, in case of the death of either, the property of the deceased should go to the survivors; and, on the death of a second party to the instrument, the whole should go to the last survivor. But the case differs from the Georgia and Connecticut cases, in this, that after the death of one of the parties to the instrument, one of the survivors made another will, which, in effect, superseded and revoked the former joint will; and, on her death, both the joint will and the subsequent separate will were “propounded,” or offered, for probate as the last will and testament of the maker of both. Probate of the joint will was rejected. And Sir John Nicholl, deciding the case, says : “I have no hesitation whatever in rejecting the allegation propounding the mutual, or conjoint, will, as that of the party deceased in this cause, on the principle, that an instrument of this nature is, unknown to the testamentary law of this country; or, in other words, that it is unknown, as a will, to the law of this country at all. It may, for aught that I know, be valid as a compact— it may be operative, in equity, to the extent of making the devisees of the will trustees for performing the deceased’s part of the compact. But these are considerations wholly foreign to this court, which looks to the instrument entitled to probate as the deceased’s will, and to that only. The allegation,plainly proceeds upon the notion of the irrevocability of the instrument which it propounds as the will of the deceased. Why, *170 this very circumstance destroys its essence as a will, and converts it into a contract; a species of instrument over which this court has no jurisdiction. Upon these broad, and, as I apprehend, sufficiently intelligible grounds, I reject this allegation.”
The next English case is that of Stracey and wife, decided on motion, by the prerogative court of Canterbury, and reported in 1 Deane’s Eccles. R. 6. It seems to be a case entirely in point, and was decided directly the other way. “Lady Stracey,” it is said, “had a power of appointment by will over certain property; and Sir J. H. Stracey had, as survivor, a power of appointment over other property, independent of his general property.” The statement in respect to the form and contents of the will, is as follows : “ The will commenced, ‘we Josias Henry Stracey and Diana Stracey, do hereby declare this to be our last will; and after the payment of all our just debts and funeral expenses, we direct that all our moneys,’ etc. Certain bequests were then given to their children ; and there was an appointment of executors of ‘ this our joint will.’” It was attested also as the will of both. And both being dead, and no revocation having been made by either, “Deane moved the court to decree probate of the paper, as the last will and testament of Diana Stracey, to be granted to the executors, limited to all such personal estate and effect, as she, the said D. S., had a right to appoint or dispose of; also, to decree a special general probate of the said paper, as the last will and testament of Sir J. H. S., to the executors.” The following is the opinion entire as reported :
“ Sir John Dodson : I think you are entitled to the prayer of your motion. Hobson v. Blackburn, when examined, is certainly not an authority against you. The paper should have been proved as the will of Lady Stracey upon her decease,but that can not affect the right of the executors now.”
The last English case is that of In the goods of Haine, de cided by the court of probate, in 1858. 1 Swabey & Tristram’s Probate and Divorce Rep. 144. It was the joint will of two brothers, who were in partnership as farmers, and were *171 joint tenants of certain real estate, giving and making several specific legacies and bequests to various persons, and jointly devising the real estate to another. By the express terms of the will, no part of it was to have effect until after the death of both testators. On the death of one of the brothers, the paper was offered for probate, and the court held that such an instrument could not be admitted to probate until after the death of both the parties. Sir C. Oreswell, in rejecting the application, named no objection to the probate other than the fact that one of the parties to the instrument was yet living; thus leaving us to infer that if both had been dead, he would have admitted it to probate.
Coming now to this country, we find but two cases which seem to have'a bearing on the subject. The first is Clayton v. Liverman, decided by the supreme court of North Carolina, in 1887. 2 Dev. & Bat. L. Rep. 558. It is very closely in point with that before us, and in the opinion of the court, as reported, the law of the case is very thoroughly discussed, both *)n principle and authority. There the parties, two unmarried sisters, gave, after their decease, a negro man to one nephew, and another negro man and all the rest of their property, after their decease, to another nephew. In form and mode of execution, the instrument was throughout a joint one. The following is a very accurate syllabus of the case: “ A paper writing executed by two persons, making, after both their deaths, a joint disposition of all their property, can not be admitted to probate as a mutual or conjoint will. And it was held, Daniel, J"., dissenting, that such a paper writing could not be proved as the separate will of either of the supposed testators, because it purported to be a joint, and not a separate will; and because it implied, from its structure, an agreement between them, which was inconsistent with its revocability, and therefore prevented its operation as a will.”
The second case is that of Exparte Day, decided by the surrogate of the county of New York. 1 Bradford’s Rep. 476. The statement of that case, as reported, is very brief, and is as follows : “ The will propounded for probate is a holograph, bearing date August 20, 1850. The last clause of ii *172 purports to be a testamentary disposition by the decedent’s wife, of some property belonging to her in her own right; in the language of the will, ‘ testified by her signature, hereto.’ The will was executed under seal, both by the decedent and by his wife, in the presence of three witnesses.” The learned surrogate, in deciding to admit the paper to probate as the will of the decedent, goes into a somewhat elaborate discussion of the subject of joint wills, and argues in favor of their validity; but, from his brief statement as to the character and contents of the will before him for probate, it would seem that the instrument, though executed jointly by husband and wife, was, in its terms as employed in the body of the will, and in its operation and effect, the separate will of each,; for all that is said as to the provisions of the will is, that “ the last clause of it purports to be a testamentary disposition by the decedent’s wife of some property belonging to her.” This is very different from the will in this case, and does not raise the question we are called on to decide.
By this contrariety of decision and opinion abroad — there being no. Ohio case on the subject — it seems to me we are thrown back upon the consideration of the question on principle, with such aids as we may gather from the policy of our legislation.
As has been said by Williams and Jarman, the principal objection to a joint will is the quality of revocability which is inherent in a will. It is of the essence of a will that it is revocable. An irrevocable will is an anomoly — a contradiction in terms. It is the first deed and the last will, which is operative. It is the policy of our law that wills may be readily revoked; and hence our statute of wills provides, “ that a will shall be revoked by the testator’s tearing, canceling, obliterating or destroying the same (with the intention of revoking it), by the testator himself, or by some person in his presence, or by his direction; ” or by some other writing executed with the same formalities as a will, as well as by operation of law. Wills ought to be readily revocable, and always subject to modification. And among the leading reasons on which the law proceeds in allowing testamentary dispositions of property, *173 in facilitating their revocation and modification, and in the indulgence and tenderness with which testators are regarded when their testamentary capacity is questioned, are these: 1. That the circumstances of a testator, and the character, fortunes and wants of the natural objects of his bounty, are subject to constant change. To-day a testator makes his will; to-morrow.a daughter is widowed, or a son is crippled; and so, what would be reasonable in a will to-day, becomes unreasonable by the accident of to-morrow. 2. That this absolute power of testamentary disposition of property, of revocation and modification, is a protection to the natural feebleness and dependence of age; enabling it, by its power to disappoint or to fulfill the expectations of others, to command that respectful attention which might otherwise be refused by the natural indifference of strangers, or unnatural indifference of relatives. And just so far as a joint will clogs the power of convenient revocation, it contravenes the policy of the law. We are not now required to decide the question whether equity will enforce the compacts which may be embraced in an attempted joint will, and thus in effect to enable parties to make, not only a joint will, but one which is irrevocable; and we therefore pass it without further observation. But, aside from this question, it seems to us evident that the sanctioning of such a will must operate to clog the power of convenient revocation. In the case of an individual testator and a separate will, the instrument is naturally either in his own manual custody or complete control; and revocation by “ tearing, canceling, obliterating or destroying,” is easy: but in the case of a joint will, either one alone of the parties to it, or a third person, would become its custodian; and if one of the parties is illiterate, or bed-ridden, or is otherwise incapable of, or indisposed to, the execution of a written revocation, the last will of that party may be defeated. And these considerations apply with increased force, where the attempted joint will is that of husband and wife, and where the husband naturally becomes the custodian of the instrument.
Again, such wills as this necessarily include something in the nature of a compact. Each provision must be made in *174 view of, or in consideration of, and be influenced by, every other provision of the will. And this fact interposes a moral barrier, at least, to the exercise of the power of revocation, however changed may be the circumstances of the testator or the deserts or needs of the objects of his bounty. And if we say the will may be revoked while both parties are living, but not after the death of one, then we make that anomalous thing, an irrevocable will; or if we say that either may revoke as to him or herself after the death of the other, then we must either hold the will to be, in effect, revoked as to both, or open the door to cruel frauds upon the deceased testator.
And it seems to me that there is great, if not conclusive, weight in the argument on which the North Carolina case to a great extent proceeds, to-wit: that such an instrument is necessarily in the nature of a compact; that a compact is, in its nature, irrevocable; and that such an instrument, therefore, can not be a will, for it is of the^essence of a will that it is revocable.
When this case was first presented for our consideration, the idea of a joint will struck us as being an utter novelty. And i t seems to us, that the idea must have been equally a stranger to the legislature which enacted our statute of wills, and statutes for the settlement of the estates of deceased persons. In all their provisions and phraseology, they provide for nothing, and seem to contemplate nothing, but separate wills and individual estates. “ Any person of full age,” etc., may make a will, etc.; shall be signed “ by the party making the same,” etc.; shall be “ attested and subscribed in the presence of such party’’ etc.; may be deposited in the office of the probate judge “ by the party making the same,” etc., “ in the county in which such testator lives,” etc., shall be indorsed with the “name of the testator,” etc.and in the lifetime of the testator, shall be “ delivered only to himselff and so on throughout. It is said, however, in reply to this suggestion, that in the reasonable construction and application of these acts, provisions which apply to persons and things expressed in the singular number only, will be held to apply as well to persons and things in the plural number, *175 when the policy and evident intent of the act requires it. But, on this subject, the statute of wills is its own interpreter. •Section 77 of that act provides, that “ every word in this act importing the masculine gender may extend and be applied to females, as well as males; and every word importing the singular number only, may extend and be applied to the several persons or things, as well as to one person or thing;” but nothing is said as to words importing the singular number only extending to persons acting jointly, or to the joint acts of persons.
Again; our legislature provides, in extended detail, for the speedy settlement of the estates of deceased persons. Suppose now, that a joint will like this, dealing with the separate property of both parties as if it were a joint fund, is held to be a valid will. One of the testators may survive the other for half a century. When is the will to be proved, and to thus become practically operative? On the death of both testators ? If so, how is the estate of the first decedent to be administered in the meantime, and what is to become of debts and legacies ? If it is to be proved on the death of the first decedent, how are the legacies to be paid ? If they remain in abeyance until after the death of both testators, what, in the meantime is to be done with that portion of the property of the decedent which is ultimately to be devoted to their payment ? If, on the other hand, they are to be paid in part at once, in what proportion is the property of the first decedent to contribute for that purpose ? It seems to us that the recognition of the valid existence of such a will would be so fruitful of practical difficulties, as to render it wiser and better to ignore their cause, than • to attempt to meet and overcome them. And if we were to make this attempt, it would be “ a leap in the dark,” without the guidance of any statute, or the light of any precedent.
But it is said, and it is true, that the second and third items of this will are really, in form and substance, separate dispositions of his or her property, by each of the testators in favor of the survivor, for life; and it is argued, on the authority of the cases before noticed, in Connecticut and Georgia, *176 that these items of the will at least are valid, and ought, therefore, to be admitted to probate. But we do hot think so. If these items were the only provisions in the will, or if all its provisions were of a like character in this respect, then the case would come within the principle of the cases referred to, and this will would stand or fall as this court might adopt or reject the authority of those cases. As to the correctness, or otherwise, of the doctrine of those cases, we express no opinion; nor is it necessary to do so; for this ease widely differs from them. Here the most important devises and bequests of the will are joint in form, and joint in substance and effect, and, as before remarked, each devise and bequest of the will must have been made, in some sense, in consideration of each and all the rest; and if one item was permitted to stand and others to fall, it might operate as a ^grievous wrong upon the intentions of one or both of the testators.
A majority of the court are of opinion that the court below did not err in holding that this instrument is not the valid joint will of both the parties to it, nor in holding that it is not the valid separate will of each or of either of them. But we think that court did err in a matter of practice prescribed by the statute, for which reason alone its judgment will have to be reversed, and the cause remanded for another trial by jury, under proper instructions by the court. The court below decided the ease and gave judgment upon demurrer to the answer; while the statute imperatively requires that “ an issue shall be made up, whether the writing produced be the last will of the testators or not, which shall be tried by a jury,” etc. This provision of the statute is imperative in its terms, and we have reason to believe that it was deliberately enacted with a view to prevent a disposition of cases for the contest of wills upon the mere consent or acquiescence of parties in any form.
Judgment reversed and cause remanded.
Peck, C. J., and Ranney, J., concurred. G-holson and Scott, JJ., dissented, as to the first and second propositions of the syllabus.